

## NUMBER 13-09-00370-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN RE STATE OF TEXAS EX REL. CARLOS VALDEZ

## On Petition for Writ of Mandamus.

# O P I N I O N

### Before Chief Justice Valdez and Justices Yañez and Benavides
### Opinion by Chief Justice Valdez

Relator, the Honorable Carlos Valdez, District Attorney of the 105th Judicial District of Texas, filed a petition for writ of mandamus by which he requests this Court to direct respondent, the Honorable Jose Longoria, presiding judge of the 214th Judicial District Court of Nueces County, Texas, to grant the State's agreed motion to dismiss an indictment based on an immunity agreement with the defendant, Stephanie Garza, the real party in interest. On relator's motion for temporary relief, we stayed Garza's trial and ordered a substantive hearing on the State's dismissal motion. For the reasons that follow, we lift the stay and deny the petition.

## I. BACKGROUND

On May 7, 2009, a grand jury indicted Vincent Johnson, Guadalupe De la Rosa Jr., DeAngelo Riley, Timothy Dixon, Jesse Salazar, and Garza on various counts of injury to a disabled individual. *See* TEX. PENAL CODE ANN. § 22.04 (Vernon Supp. 2008). All of the defendants were employees at the Corpus Christi State School, and it was alleged that the defendants, with the exception of Garza, organized and videotaped fights between the school's residents. Garza's indictment was filed in Judge Longoria's court, and the other defendants' indictments were filed in the 117th Judicial District Court of Nueces County, Texas, which is presided over by the Honorable Sandra Watts.

On May 15, Judge Longoria sent Garza and Valdez a "notice of special trial setting," which provided an arraignment date of May 29 and set trial for July 6. On May 19, Judge Watts arraigned Riley, Dixon, and Salazar, and set their trial for July 6. On June 4, the State filed an unopposed motion to transfer Garza's case from Judge Longoria's court to Judge Watts's court on the ground that transfer was mandatory under the local rules of Nueces County. *See* NUECES CO. (TEX.) CT. LOC. R. 3(A).

On June 11, Judge Longoria held a hearing on Valdez's motion to transfer, heard arguments from an assistant district attorney and Garza's counsel, and denied the motion by written order. In his order, Judge Longoria stated:

> After consideration for the request for transfer, the Court finds that the allegations in this case are substantially different from the five companion cases pending in the 117th Judicial District Court. The Court further finds that a transfer of this case to the 117th Judicial District Court as provided under the Local Court Rules would not be in the interest of judicial economy.

Valdez did not seek review of Judge Longoria's denial of the transfer motion.

Meanwhile, over the course of his investigation and development of the cases, Valdez offered Garza transactional immunity in exchange for her testimony in the trials of

2

the other defendants. On June 22, Valdez moved, with Garza's agreement, to dismiss the criminal action against Garza on the immunity ground. Four days later, Judge Longoria summarily denied the State's motion at a hearing in which the reporter's record spans only two pages. The "first half" of the hearing consists of the following:

[Court]: What do you have, Mr. Mann [the prosecutor assigned to the case]?

Mann: It's a motion to dismiss. It's agree [sic] with Mr. Botary [Garza's defense counsel]. Mr. Botary and his client have agreed to a grant of her immunity in return for her testimony in what's become known as the "State School Fight Club."

[Court]: All right.

Botary: We join in that motion.

[Court]: All right. Court's gonna deny your motion. Court's the only one that can grant immunity. Court denies it. Thank y'all for coming in. Appreciate it.

Botary: Your Honor, I –

[Court]: Thank you.

Botary: – have some pretrial motions.

[Court]: Well, we'll hear those before trial. When we're [sic] set, what Anna? Well, where's Angelica? Who's trying this case? I mean, I get so many prosecutors coming up here on this case. I don't know why y'all keep coming up on dismissal. I already told y'all once I wasn't gonna dismiss it. Evidently, y'all didn't read the law on it. I've got the research on it, so. That's – When is it set for trial? Can somebody tell me?

The "second half" of the hearing was devoted to scheduling matters.

On July 2, Valdez filed (1) a petition for writ of mandamus, praying that we direct Judge Longoria to grant, or at least meaningfully hear, the State's agreed motion to dismiss and for all other relief to which it is entitled, and (2) an emergency motion for stay of trial proceedings.

As evidenced by the brief exchanges at the June 26 hearing, Judge Longoria did not provide the parties with a substantive hearing. Therefore, we issued an order staying the trial court proceedings and instructing Judge Longoria to conduct a hearing and issue a written order outlining his ruling.

On July 6, a second dismissal hearing was held, and the trial court heard testimony from Cathy Chopin, the prosecutor assigned to the 117th Judicial District Court, and Garza. Chopin testified that she prepared the cases against the defendants in Judge Watts's court and that a video recording of fights between residents at the state school would be used as evidence against the defendants. Chopin further testified that Garza was the only witness who could properly identify the other defendants in the video because she was working on the evening that the video was recorded. According to Chopin, Garza's testimony was necessary to secure a conviction against each defendant. Besides identifying defendants in the video, Chopin noted that Garza was fully cooperating with the investigation and would be instrumental in prosecuting allegedly responsible parties and clearing innocent individuals. Garza testified that she would cooperate with local and state law enforcement officials.

Shortly after the second dismissal hearing, Judge Longoria issued a written order denying Valdez's motion. The order specified the following rationale:

1. The testimony provided by the Defendant can be acquired from other persons who are not criminally culpable, including the printed policy and procedure manual and other employees;

2. The testimony is not such that without it criminal convictions on the other defendants/co-defendants would be impossible;

3. The testimony does not warrant a dismissal of the case and an escape from prosecution as it was vague, ambiguous, without specificity, and weak as per the record;

4

4.      The crime for which this Defendant stands accused is one of the most egregious crimes that has been exposed in South Texas and the outrage at the crime at issue here has created public concern all over the nation, and this court feels that the court should use great care and scrutiny in allowing a defendant to go unscathed for her role;

5.      The victims of the crime at issue here are some of the most vulnerable members of our society and deserve to be protected as the testimony was that many victims are without ability to even vocalize the torment they endured;

6.      There is no evidence that the numerous victims of this crime, or their families, have consented and agreed to this dismissal;

7.      The Defendant showed no remorse for her actions in this case and even advised the court that if the cell phone had not been found and turned over the fight club at the state school would still be going on even today;

8.      The Defendant offered no reason to the court that she did not report the beatings to law enforcement or her supervisor; and

9.      This court does not find that a dismissal serves justice or the public good.

We now turn to the substance of Valdez's petition.

## II. DISCUSSION

The standard for mandamus relief articulated by the court of criminal appeals requires the relator to establish that: (1) there is no adequate remedy at law to redress the alleged harm; and (2) only a ministerial act, not a discretionary or judicial decision, is being sought. *See State ex rel. Young v. Sixth Judicial Dist. Court of Appeals at Texarkana*, 236 S.W.3d 207, 210 (Tex. Crim. App. 2007) (citing *De Leon v. Aguilar*, 127 S.W.3d 1, 5 (Tex. Crim. App. 2004)).

In a single issue, Valdez contends he has met the criminal-mandamus standard by establishing that Judge Longoria "abused his discretion" by refusing to dismiss the indictment against Garza (1) in light of the immunity agreement, (2) the necessity of her

5

testimony in the cases before Judge Watts, and (3) the governing criminal code provision.

Article 32.02 of the code of criminal procedure provides:

> The attorney representing the State may, by permission of the court, dismiss a criminal action at any time upon filing a written statement with the papers in the case setting out his reasons for such dismissal, which shall be incorporated in the judgment of dismissal. No case shall be dismissed without the consent of the presiding judge.

TEX. CODE CRIM. PROC. ANN. art. 32.02 (Vernon 2006).

In *Smith v. State*, the court of criminal appeals explained the origin and development of dismissal authority in Texas. 70 S.W.3d 848, 854 (Tex. Crim. App. 2002). The common-law rule that existed before the 1876 predecessor of article 32.02 vested the prosecutor with the sole authority to dismiss a criminal prosecution. *Id*. (citing *State v. Anderson*, 119 Tex. 110, 115-19, 26 S.W.2d 174, 175-78 (1930)). When the Texas Attorney General relinquished authority over most local criminal prosecutions to district attorneys, the legislature feared that abuse would occur without some supervision. *Id*. (citing *Anderson*, 26 S.W.2d at 178). The court of criminal appeals explained that article 32.02's predecessor was enacted to provide some supervision by district courts in the form of veto power over local district attorneys. *Id*. at 354-55.

A plain reading of article 32.02 establishes that the legislature envisioned dismissal of a criminal prosecution only with the trial court's consent. Our review of the relevant case law reveals that a trial court's "veto power" over dismissal is not a ministerial act. Additionally, the rationale for granting a trial court "veto power," as articulated by the *Smith* court, leads us to believe that the exercise of such power is discretionary, and therefore, outside the bounds of mandamus relief. Valdez's sole issue is overruled.

6

### III. Conclusion

Having overruled Valdez's sole issue, we lift the stay and deny the petition for writ of mandamus.

_____
ROGELIO VALDEZ
Chief Justice

Publish. TEX. R. APP. P. 47.2(b)
Opinion delivered and filed this
the 3rd day of August, 2009.