**Affirmed and Majority and Dissenting Opinions filed September 30, 2021.**



**In The**

# Fourteenth Court of Appeals

---

**NO. 14-20-00496-CR**

---

**THE STATE OF TEXAS, Appellant**

**V.**

**SANITHA LASHAY HATTER, Appellee**

**On Appeal from the 230th District Court
Harris County, Texas
Trial Court Cause No. 1667833**

---

**NO. 14-20-00539-CR**

---

**IN RE THE STATE OF TEXAS EX REL KIM OGG**

**ORIGINAL PROCEEDING
WRIT OF MANDAMUS
230th District Court
Harris County, Texas
Trial Court Cause No. 1667833**

Appellee Sanitha Lashay Hatter was arrested for felony assault of a public servant and misdemeanor driving while intoxicated ("DWI"), both of which arose from the same incident. While these charges were pending, Appellee was charged with a second misdemeanor DWI. In the underlying proceeding, the felony assault charge proceeded independently and was scheduled for trial prior to any disposition of the misdemeanor charges.

The State filed a "Motion to Dismiss" with respect to the felony charge, which the trial court granted. According to the State's prosecutor, the felony charge was dismissed based on the understanding that Appellee would plead guilty to the misdemeanor charges. But the misdemeanor charges also were dismissed shortly thereafter. The State re-filed the felony charge approximately two months later.

In response, Appellee filed a "Motion for Specific Performance" asking the trial court to enforce the prosecutor's "promise of a dismissal" with respect to the felony charge. The trial court granted the motion and dismissed the felony charge.

The State filed both a direct appeal (case no. 14-20-00496-CR) and a petition for writ of mandamus (case no. 14-20-00539-CR) challenging the trial court's order dismissing the felony charge. In the ordinary appeal proceeding, we affirm the trial court's order dismissing the felony charge. We deny the State's petition for writ of mandamus as moot.

## BACKGROUND

In the underlying proceeding, an indictment was filed charging Appellee with felony assault of a public servant. *See* Tex. Penal Code Ann. § 22.01(b-2). In January 2020, the State filed a "Motion to Dismiss" requesting the trial court dismiss the felony charge. In the section of the motion entitled "Explanation", the State

2

noted that it "reserves the right to refile." The trial court granted the motion to dismiss.

In March 2020, the State re-filed the felony assault charge against Appellee. Appellee filed a "Motion for Specific Performance" requesting that the trial court enforce the felony prosecutor's "promise of a dismissal." In support of her motion, Appellee asserted that the felony prosecutor made "several representations to the Defense that no refile would occur," including "multiple statements guaranteeing a dismissal of this case 'no matter what,' that the State and the Defense had a 'gentleman's agreement,' and that the State promised to not refile the case against [Appellee]."

Appellee also filed an unsworn declaration by defense counsel. In relevant part, the declaration states:

> The offer from the State to my client in our felony case was that in exchange for a plea of guilty in her Driving While Intoxicated case(s), her Assault of a Public Servant case would be dismissed. Another attorney represented [Appellee] on both of her misdemeanor cases. That attorney did not want to plea [Appellee] to her Driving While Intoxicated charges so that she could get a dismissal on her felony case. Because [Appellee's] felony disposition was contingent on her misdemeanor dispositions and her misdemeanor attorney's unwillingness to negotiate a plea with that agreement, I felt [Appellee] was being treated unfairly.

> I spoke on many occasions to the chief prosecutor on the felony case, Mr. James O'Donnell. Mr. O'Donnell understood the problem and unfairness surrounding the misdemeanor disposition affecting [Appellee's] felony disposition. After speaking to him on many occasions (of which I do not remember the dates), we were able to come to an agreement. Mr. O'Donnell agreed that regardless of the disposition of the misdemeanor Driving While Intoxicated cases, he would dismiss the felony Assault of a Peace Officer. He made multiple promises to me that he would not only dismiss the felony case regardless of the misdemeanor dispositions, but that he would promise

to never re-file the felony case. He made this guarantee to me multiple times while in the 230th courtroom at 201 Caroline. . . . Mr. O'Donnell told me that he would give the reason of "other" on the dismissal and would write "subject to re-file" although he again promised that he would not do so and no one else would either.

Continuing on, defense counsel's declaration states that Appellee's misdemeanor charges were dismissed "because both of those cases contained faulty blood vials". Defense counsel asserted that, following these dismissals, O'Donnell's supervisors ordered him to re-file the felony charge against Appellee.

The trial court held a hearing on Appellee's motion in June 2020. Testifying at the hearing, O'Donnell said Appellee's felony case was set for trial prior to the disposition of her misdemeanor charges and the State offered to "dismiss the felony case if [Appellee] pled on the [misdemeanor] DWI cases." According to O'Donnell, at this time he was "under the impression that the DWI cases would be worked out" and "didn't feel it was appropriate to try [Appellee's] [felony] case when [he] had made the — extended the offer to dismiss the felony if [Appellee] had pled on the DWIs."

O'Donnell testified that he "remember[ed]" his discussions with defense counsel "regarding the case and that [he] would not re-file the case and that [he] would not instruct any of [his] prosecutors to re-file the case." O'Donnell said he could not recall "the exact words that were used" but "remember[ed] telling [defense counsel] that [his] intention was to dismiss the case and that it was not [his] intention to re-file this case." O'Donnell did not recall using the words "gentleman's agreement" or "promise" in his conversations with defense counsel. At the time the felony charge was dismissed, O'Donnell said the "the prosecutors in the misdemeanor court were in the process of evaluating their cases" against Appellee.

4

According to O'Donnell, it was not his decision to re-file the felony charge against Appellee; rather, that decision was made by O'Donnell's supervisors. O'Donnell said the complaining witness in the felony assault case "brought it to the DA's office's attention to re-file" the case.

After hearing the evidence and the argument of counsel, the trial court found O'Donnell to be "an honorable, forthright, and honest prosecutor"; it found defense counsel's declaration to be true and correct; and it found that O'Donnell promised to dismiss the case without re-filing but simply did not remember making that promise. The trial court granted the motion for specific performance and declared on the record that the case "is dismissed." On the signed order granting the motion, the trial court wrote, "State is ordered to dismiss."

The State filed this appeal together with an alternative petition for writ of mandamus.

## ANALYSIS

### I.     Jurisdiction

This case presents an initial question regarding whether the appropriate vehicle for potential appellate relief is by mandamus or ordinary appeal.

The State may appeal a trial court order that dismisses a charging instrument. *See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(1). The State's right to appeal the dismissal of a charging instrument includes the right to appeal "whenever the order effectively terminates the prosecution in favor of the defendant." *State v. Moreno*, 807 S.W.2d 327, 332 (Tex. Crim. App. 1991) (en banc). As the *Moreno* court stated, an order "effectively terminates the prosecution against the accused" when "the effect of [the] order forces any alteration of the indictment or information before the trial on the merits and the State is not willing to comply with that order." *Id*. at 334.

5

The challenged order grants Appellee's motion for specific performance and orders the State to dismiss. The order does not by its terms purport to dismiss the indictment, although the trial court stated as much at the hearing's conclusion. The practical effect of the trial court's order is to preclude further prosecution because the court announced the case was dismissed and ordered the State to dismiss it. Thus, we hold that the State may appeal from the challenged order in the same manner as the State may appeal from an order expressly dismissing an indictment. *See id.* at 332, 333 (explaining that article 44.01 must be liberally construed to achieve its purpose of permitting the State to appeal "from any order concerning an indictment or information whenever the order effectively terminates the prosecution in favor of the defendant"); *see also In re State ex rel. Valdez*, 294 S.W.3d 337, 340 (Tex. App.—Corpus Christi 2009, orig. proceeding) (relator's petition for mandamus requesting the appellate court to direct the trial court "to grant the State's agreed motion to dismiss an indictment based on an immunity agreement" was "outside the bounds of mandamus relief"). Because the State has an adequate remedy at law by ordinary appeal, we dismiss the State's petition for writ of mandamus, case no. 14-20-00539-CR, as moot.

## II. Merits of the State's Appeal

In a single issue, the State argues the "trial court was without authority to dismiss the charging instrument or order the State to dismiss it." We disagree.

We apply a bifurcated standard of review when considering a trial court's decision to dismiss a case. *State v. Krizan-Wilson*, 354 S.W.3d 808, 815 (Tex. Crim. App. 2011). We afford almost total deference to a trial court's findings of fact that are supported by the record, as well as any mixed questions of law and fact that rely upon the credibility of witnesses. *Id.* When resolution of the case turns solely on

questions of law or mixed questions that do not depend on credibility determinations, our review is *de novo*. *Id.*

In Texas, "the power to grant immunity from prosecution is statutory rather than constitutional" and is derived "from the statutes that authorize officers of the Judicial Department to dismiss prosecutions." *Graham v. State*, 994 S.W.2d 651, 653-54 (Tex. Crim. App. 1999) (citing *Zani v. State*, 701 S.W.2d 249, 253 (Tex. Crim. App. 1985) (en banc)). Under the relevant statute, the county attorney or district attorney has the authority to dismiss a prosecution, but only with the approval of the trial court. *See* Tex. Code Crim. Proc. Ann. art. 32.02 ("No case shall be dismissed without the consent of the presiding judge."). Accordingly, a grant of immunity from prosecution requires the trial court's approval. *See id.*; *see also Smith v. State*, 70 S.W.3d 848, 851 (Tex. Crim. App. 2002) (en banc) ("a District Attorney has no authority to grant immunity without court approval, for the approval of the court is essential to establish immunity") (internal quotation omitted).

Here, Appellee asserted in her "Motion for Specific Performance" that the State "promised to not refile the case against" her. Defense counsel's declaration filed in support of Appellee's motion averred that prosecutor O'Donnell "agreed that regardless of the disposition of the misdemeanor Driving While Intoxicated cases, he would dismiss the felony Assault of a Peace Officer" and "made multiple promises . . . that he would not only dismiss the felony case regardless of the misdemeanor dispositions, but that he would promise to never re-file the felony case."

At the hearing on Appellee's motion, O'Donnell testified that he "remember[ed] telling [defense counsel] that [his] intention was to dismiss the case and that it was not [his] intention to re-file this case" but did not recall using the words "gentleman's agreement" or "promise".

7

Granting Appellee's motion, the trial court found as follows:

> It appears we have a disagreement as to memory. Mr. O'Donnell has admitted that he merely does not remember, but he cannot refute the things that [defense counsel] has presented.

> As such, I'm inclined to grant [Appellee's] motion for specific performance in this case, which I believe is the honoring of the promise . . . . [A] promise was made to dismiss this case no matter what. A dismissal was filed. A promise was made not to re-file. It was re-filed. And therefore, I'm granting this motion.

Under the applicable standard of review, we defer to the trial court's finding of fact regarding what prosecutor O'Donnell promised to defense counsel regarding Appellee's future immunity from the felony charge. *See Krizan-Wilson*, 354 S.W.3d at 815. This finding was premised on the trial court's resolution of O'Donnell's and defense counsel's differing accounts of what was promised with respect to Appellee's immunity agreement. The record does not warrant revisiting this determination. By granting Appellee's motion for specific performance, the trial court provided the approval necessary to render the grant of immunity enforceable. *See* Tex. Code Crim. Proc. Ann. art. 32.02; *see also Smith*, 70 S.W.3d at 851; *Graham*, 994 S.W.2d at 654.

On appeal, the State contends that a "prosecutor's offer of immunity from future prosecution is binding only if the trial court approves of the offer ***when it is made***." (emphasis added). But the relevant authorities do not support this interpretation regarding when the trial court's approval must be secured. Specifically, neither statute nor case law indicates that the trial court's approval of an immunity agreement must be concurrent with the offer itself. *See* Tex. Code Crim. Proc. Ann. art. 32.02 ("No case shall be dismissed without the consent of the presiding judge."); *see also Smith*, 70 S.W.3d at 855 (stating that the trial court must "approve[] the dismissal that ***results*** from an immunity agreement") (emphasis

8

added).  Moreover, the trial court granted both the State's motion to dismiss and Appellee's motion for specific performance, thereby supplying the necessary approval both when the agreement was made and when Appellee sought to have it enforced.

The State also argues that O'Donnell's promise to defense counsel constituted a "unilateral contract" that is "enforceable only when the promisee performs." Asserting that "[A]ppellee did nothing", the States contends that O'Donnell's "promise, without any performance by the [A]ppellee, is not enforceable."

We reject this contention.  In *Smith v. State*, the Court of Criminal Appeals delineated the trial court's and the prosecutor's differing roles with respect to immunity agreements:

> The terms and conditions of an immunity agreement are wholly within the bargaining process of the parties involved in the contract, subject to the veto power of the court over their final agreement.  Often the required level of performance under the agreement will be to the satisfaction of the prosecutor.  We will not place courts in a position that requires them to supervise the performance of every witness under an immunity agreement.

> Supervision of the performance of an immunity agreement is the province of the prosecutor.  . . .

> Because it is the prosecutor who initiates a dismissal and sets the reasons for the dismissal, it is the prosecutor who is responsible for crafting the conditions of an immunity agreement.  Provided the judge approves the dismissal that results from an immunity agreement, and is aware that the dismissal is pursuant to an immunity agreement, the judge does not have to be aware of the specific terms of that immunity agreement for it to be enforceable.

70 S.W.3d at 855.  As *Smith* makes clear, the specific terms of Appellee's immunity agreement and corollary issues regarding whether those terms were met were the sole responsibility of the prosecutor.  The trial court was not required to know the

specific terms of the agreement nor was it required to supervise the parties' performance. *See id.*

Rather, the trial court possessed "veto power . . . over [the parties'] final agreement." *Id.* Here, the trial court declined to veto the parties' immunity agreement and provided the approval necessary to render the agreement enforceable. *See* Tex. Code Crim. Proc. Ann. art. 32.02. Based on the appellate record and the deference we afford to the trial court's findings of fact regarding the immunity agreement, we affirm the trial court's order dismissing Appellee's felony charge.

We overrule the State's issue on appeal.

## RESPONSE TO THE DISSENT

Our dissenting colleague opines that O'Donnell's promise is unenforceable based on the absence of consideration. Accepting this position would effectively decree that a prosecutor's word is worthless, thereby inviting countless foreseeable incidents of mistrust between the State and the accused in Texas. We respectfully decline the dissent's invitation to create such precedent.

## CONCLUSION

We affirm the trial court's order granting Appellee's "Motion for Specific Performance."


/s/     Meagan Hassan
        Justice

Panel consists of Justices Jewell, Bourliot, and Hassan (Jewell, J., dissenting).

Publish — Tex. R. App. P. 47.2(b).